## B. F. HAYWORTH v. E. RAMSEY.

**Motion to Quash Sale of Lands — Statutory Provisions.**

A motion made to set aside the sale of lands, for irregularity in the acts of the officers of the court, is not restricted to the time prescribed in chapter 36, Rev. Stat. (1 Stanton, 490), which provides that "sales made under execution by fraud, cavil, or collusion may be set aside on the motion of the person aggrieved or by bill in equity. If by motion, it must be commenced within one year from the sale." In the absence of fraud, cavil, or collusion this section would not apply.

**Discharge of Levy — Venditioni Exponas.**

Where a sale of lands under a levy issued legally before that time is discharged by the release of the purchaser of the land at the sale thereof, a subsequent issual of a venditioni exponas and a second sale thereunder is void. The release by the purchaser under the levy was a termination of the authority of the sheriff and the levy, and operated as notice to the defendants in the execution that they might not expect or look to further action of the sheriff upon that levy.

APPEAL FROM HICKMAN CIRCUIT COURT.

June 6, 1867.

OPINION OF THE COURT BY JUDGE HARDIN:

By the judgment which this appeal brings up for revision, the Circuit Court set aside a sale made by the sheriff of Hickman County on the 2d day of April, 1860, of a tract of land containing 160 acres, which was sold as the property of the appellee, Elijah Ramsey, and bought by B. F. Hayworth as administrator of R. Hamell, at the price of $731.67; and quashed a writ of venditioni

exponas, which appears to have issued on the same day of the sale, and under which the same was made.

It appears that judgments were recovered by Hamell's administrators against William Mershow and said Ramsey, separately, upon their joint note for $565, with interest from the 2d day of February, 1857, on which separate executions issued against them, one of which they, together with William Dodge, replevied on the 2d day of November, 1858, the bond amounting to $646.95.

Upon this bond an execution was issued on the 3d day of February, 1859, on which two levies seems to have been indorsed, one of them dated February 22, 1859, upon the interest of Mershow in a tract of land described as that on which he resided; and the other levy dated March 18th, upon 223 acres of land "on the Olian creek, known as the old E. Ramsey farm."

This execution appears to have been returned March 21, 1859, indorsed "no sale for want of bidders;" and on the 5th of April, 1859, a venditioni exponas issued commanding the sheriff to enforce said levy by a sale of the property; which was returned with indorsement that the sheriff had sold the property on the 2d day of May, 1859, to R. H. Emmerson for $100.

On the 3d day of May, 1859, another execution was issued on the bond, on which the sheriff indorsed the following levy:

"Levied the within on W. Mershow's right of redemption, on the tract of land upon which he resides, levied on as the property of W. Mershow, May 8, 1859."

And on the 6th of June, 1859, the sheriff returned the execution indorsed "no sale for want of bidders."

On the 15th of July, 1859, a venditioni exponas was issued to enforce said levy, which was returned August 4th, 1859, indorsed "no sale for want of bidders."

And on the 26th of September, 1859, another venditioni exponas was issued commanding the sheriff again to enforce said levy, on which the sheriff returned that he sold the land on the 3d of October, 1859, and that "E. Ramsey became the purchaser at five dollars and fifty cents."

Again, an execution of fieri facias was issued on said bond, dated October 5, 1859, on which the sheriff indorsed the following levy:

"Levied the within on a tract of land upon which W. Mershow now resides lying on the waters of the Olian, October 10, 1859."

And this execution was returned indorsed "no sale for want of bidders."

A venditioni exponas was issued to enforce this levy, dated the 22d day of November, 1859, on which the sheriff made the following return:

"By virtue of the within, I offered for sale at the Court House door in Clinton, Ky., on the 5th day of December, 1859, it being County Court day, the within named land, and T. Rash became the purchaser, at one dollar and after deducting my commission of five cents, entitles this to a credit of 95 cents.

"J. D. HARLAN, D. S., for
"W. CROMWELL, S. H. C."

The execution which was levied on the 160 acres of land in controversy as the property of the appellee, Ramsey, bears date the *3d day of January, 1860, and the levy was made the 20th* of January, 1860. To enforce this levy the venditioni exponas quashed by the court was issued.

But it appears by the sheriff's return succeeding the levy on the fieri facias, that he proceeded to sell the land on the 5th of March, 1860, and G. W. Rennick became the purchaser at the price of fifty cents.

It is proper to state in this connection that on the trial of the motion the defendants read in evidence the following relinquishment of Rennick "which was admitted to be genuine, and returned with the execution:" "Whereas I became the purchaser of 160 acres of land, in Hickman County, Ky., known as the Old E. Ramsey place, for fifty cents on an execution in favor of R. Hamells, administrator, as E. Ramsey and others on the 5th day of March, 1860. Now, for the purpose of making a sale of said property, I do hereby relinquish all right I have acquired to the same by virtue of said sale this 2d day of April.

Att.                                                    S. W. RENNICK."

B. L. BON, D. S.

It is insisted for the appellants that the judgment should be reversed on several grounds, which will be examined so far as their consideration is deemed necessary.

1. It is objected that "no motion was ever made." The following order, made as of date the 29th of August, 1863, is deemed a sufficient answer to this objection. "The parties appeared by

their attorneys, and by their agreement the plaintiff filed his notice of this motion duly executed upon the defendants."

2. That as the proceeding was in effect a motion to quash the sheriff's sale, and was instituted more than one year from the time of sale, it was barred by the provision, as to limitation, contained in the first section of article 16 of chapter 36, of the Revised Statutes (1 Stanton, 490) ; that section so far as it relates to this question is as follows:

" Sales made under execution by fraud, cavil, or collusion may be set aside on the motion of any person aggrieved or by bill in equity.

" 1. If by motion, it must be commenced within one year from the sale."

This motion is not made on the ground of " fraud, cavil, or collusion," but for irregularity in the officers of the court, and the appellee's right to prosecute the motion, was not in our opinion restricted to the time prescribed in the statute referred to, it not being applicable to this case.

3. It is urged for the appellants that the sale was not irregular or illegal, and the court, therefore, erred in setting it aside, and this leads us to examine some of the grounds of the motion, as disclosed in the notice, with the objections taken thereto, by the appellant.

1. The appellee sought to vacate the sale " because on the 4th day of October, 1859, there issued from the same office in favor of same plaintiffs, and against same defendants and for same debt, an execution which on the 10th day of October, 1859, was levied on a tract of land belonging to Wm. Mershow, one of the defendants in said execution, but which levy was never legally disposed of, which should have been done before the said execution No. 2,250 was issued and levied as aforesaid."

Although, as suggested for the appellants, there is a discrepancy between the execution above referred to, and that on which the levy was made, under which the land was sold, as to the name of Hamell, the testator of the plaintiffs in the executions, the one stating it as *Caleb Hamell* and the other as *R. Hamell,* we think the variance unimportant, as enough appears by the two executions to show beyond a doubt that they were both issued for the same identical debt. But admitting this to be so, it is equally clear, that the execution stated, as of date the 4th of October,

1859, is the same mentioned in our statement of this case, which is dated October 5, 1859, and as also shown in the statement, the levy made under that execution was disposed of and. discharged by the sale made to Rash on the 5th day of December, 1859, and as we have seen, the execution which was levied on the land in controversy did not issue till 3d of January, 1860, and was, therefore, legally issued.

2. We think it sufficiently appears that the venditioni exponas No. 2,533, under which the land was sold, refers to the levy made on the 20th of January, 1860, and waiving the point as to whether the sale made on the 2d day of April, 1860, the day on which the venditioni issued was advertised or not, as required by law, as well as the effect of a failure to advertise it, we have still to decide whether the sale made to Rennick on the 5th of March, 1860, did or not discharge the levy, notwithstanding the inconsiderable and almost nominal sum for which it was made, and his subsequent relinquishment of his rights acquired by that purchase. If the levy was thus discharged the subsequent issual of the venditioni exponas, and the action of the sheriff in making the second sale, were alike unauthorized. The clear import of the sheriff's return of the sale to Rennick was an examination of the levy, and a termination of the authority of the sheriff thereby acquired, and operated as notice to the defendants in the execution that they might not expect or look to further action of the sheriff upon that levy, and was well calculated to lull them from exercising any of the rights, which the law secures to debtors, in respect to sales of their property under execution. And although the relinquishment of Rennick may have inured to the benefit of Ramsey, by removing an incumbrance from his land, it did not, in our opinion, restore vitality to a levy, which by the action of the sheriff had performed its functions, and ceased to have enforcible validity as such.

As it results from this view, that the court properly quashed the venditioni exponas, and set aside the sale, the consideration of other questions became unnecessary.

Wherefore the judgment is affirmed.

*Worthington & Joyes,* for Appellant.

*Rodman,* for Appellee.